

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | No. 3:25-cr-00196 |
| v. | ) | 18 U.S.C. § 2 |
| | ) | 18 U.S.C. § 371 |
| **DAVID RAY STARK** | ) | 33 U.S.C. § 1319(c)(2)(A) |
| | ) | 33 U.S.C. § 1319(c)(4) |
| **CALEB WARREN RANDALL** | ) | |

# I N D I C T M E N T

THE GRAND JURY CHARGES:

At all times material to this Indictment:

### I.        Background

1.        Allwaste Onsite LLC, doing business as Onsite Environmental ("Onsite Environmental" or "Onsite") was a limited liability company registered in the State of Tennessee. Onsite's principal business address was 1501 Baptist World Center Drive, Nashville, Tennessee, within the Middle District of Tennessee (the "Nashville Facility") and charged its customers a fee to treat waste. Onsite discharged industrial waste into the Nashville, Tennessee, sewer system operated by Metropolitan Government of Nashville and Davidson County ("Metro").

2.        Defendant **DAVID RAY STARK ("STARK")** was the Plant Operations Manager and supervised the day-to-day operations at Onsite's Nashville facility, including waste treatment and disposal of waste into the Metro sewer system.  Defendant **STARK** was a "responsible corporate officer" of Onsite Environmental pursuant to Title 33, United States Code, Section 1319(c)(6), and a "person" as defined in Title 33, United States Code, Section 1362(5).

3.        Defendant **CALEB WARREN RANDALL ("RANDALL")** was the Plant Supervisor at Onsite's Nashville facility and directed the activities of Onsite's employees at the

Nashville facility, including waste treatment and disposal of waste into the Metro sewer system. Defendant **RANDALL** was a responsible corporate officer of Onsite Environmental pursuant to Title 33, United States Code, Section 1319(c)(6), and a "person" as defined in Title 33, United States Code, Section 1362(5).

4.     Onsite's functions at its Nashville Facility included the treatment of various non-hazardous liquid waste streams, including landfill leachate, oily water, grease trap waste, cutting and stamping oils, and other liquid wastes. Landfill "leachate" is water that drains out of landfills after it percolates through the landfill waste.  Onsite was authorized to discharge the treated waste streams to the Nashville sewer system pursuant to a pretreatment permit issued by Metro. Metro was a governmental, municipal, and public corporation created under the constitution and laws of the State of Tennessee.

5.     Defendants **STARK** and **RANDALL** directed Onsite's employees to carry out tasks associated with Onsite's operations at the Nashville Facility, including the treatment of waste streams and the disposal of wastes into the Metro sewer system.

## II.     The Clean Water Act

6.     The Federal Water Pollution Control Act, Title 33, United States Code, Sections 1251 *et seq.*, commonly known as the Clean Water Act ("Clean Water Act" or "CWA"), was enacted in 1972. The purpose of the Clean Water Act was the restoration and maintenance of the chemical, physical and biological integrity of the Nation's waters. Title 33, United States Code, Section 1251(a). In addition, the CWA was enacted to prevent, reduce, and eliminate water pollution and to conserve the waters of the United States for the protection and propagation of aquatic life and wildlife, recreational purposes, public drinking water, and agricultural and industrial uses. Title 33, United States Code, Section 1252(a). To achieve these goals, the CWA

2

regulated, among other things, the discharge of pollutants into: (a) sanitary sewer systems that led to municipal sewage treatment plants, also known as publicly owned treatment works ("POTWs"); and (b) waters of the United States. Specifically, the CWA prohibited the discharge of any pollutant into to waters of the United States except in compliance with a permit issued pursuant to the National Pollutant Discharge Elimination System ("NPDES") by the U.S. Environmental Protection Agency ("EPA") or by a delegated state under the authority of the Clean Water Act, Title 33, United States Code, Section 1311(a).

7. EPA has delegated the responsibility for the implementation of the Clean Water Act in the State of Tennessee to the Tennessee Department of Environment and Conservation ("TDEC").

8. A POTW is a sewage treatment system designed to collect and treat pollutants in municipal sewage and industrial wastes prior to discharging into waters of the United States. POTWs have pipes and sewers connected to the plants, as well as the treatment plant itself. Title 40 Code of Federal Regulations, Section 403.3(o). A "pollutant" was defined to include, among other things, sewage, garbage, chemical wastes, and industrial waste discharged into water. Title 33, United States Code, Section 1362(6).

9. The Clean Water Act made it a crime for any owner or operator of a source to which a pretreatment standard or prohibition applied to knowingly operate such a source in violation of any such pretreatment standard or prohibition. Title 33, United States Code, Sections 1317(d) and 1319(c)(2)(A). The CWA also made it a crime to knowingly falsify, tamper with, or renders inaccurate any monitoring device or method required to be maintained. Title 33, United States Code, Section 1319(c)(4).

3

Case 3:25-cr-00196    Document 3    Filed 09/10/25    Page 3 of 13 PageID #: 5

10. Metro's sewer system was a POTW. On or about October 23, 2020, TDEC issued NPDES permit TN0020575 to Metro that, among other things, authorized the discharge of pollutants from its POTW to the Cumberland River. To protect the POTW from discharges by industrial users, TDEC had approved Metro to administer a local pretreatment program for industrial users of its POTW under Title 40, Code of Federal Regulations, Section 403.9. The Metro Department of Water and Sewerage Services was responsible for oversight of Metro's Pretreatment Program.

11. Pursuant to NPDES Permit TN0020575, Metro was required to implement a pretreatment program which required Metro, among other things, to "carry out inspection, surveillance, and monitoring procedures which will determine, independent of information supplied by the industrial user (IU), whether the IU is in compliance with the pretreatment standards."

12. Pursuant to the CWA, Onsite Environmental applied for and received a pretreatment permit from Metro, Industrial Permit CP-0219 (the "Pretreatment Permit"), which authorized the Nashville facility to discharge treated liquid wastes to Metro's sewer system. The Pretreatment Permit set limitations on concentrations of various pollutants that Onsite was permitted to discharge into Metro's sewer system. These limitations were important to ensure that Metro's sewer system and wastewater treatment plant could properly operate without being obstructed, overloaded, or otherwise harmed. Metro also assessed treatment surcharges on Onsite when Onsite exceeded discharge concentration limits set forth in the Pretreatment Permit. The Pretreatment Permit requirements also included a prohibition on, among other things, bypasses of Onsite's treatment processes. "Bypass" was defined as "the intentional diversion of waste streams from any portion of an industrial user's treatment facility."

4

13.  Onsite's treatment processes at its Nashville Facility were connected via pipes to an open flume ("discharge flume") which flowed into the Metro sewer system. Multiple pipes and hoses from the various waste treatment processes at Onsite converged at the discharge flume where discharges could be observed and sampled prior to entering the Metro sewer system.

14.  To implement the requirements of the CWA and Metro's NPDES Permit TN 0020575 pretreatment program, Metro placed a sampling device at the discharge flume with which Metro intended to take representative samples of discharges from Onsite's Nashville Facility. The sampling device, known as an "ISCO Sampler" was programmed to take samples of Onsite's discharges at set intervals over a 24-hour period. Metro employees would leave the ISCO Sampler at Onsite's discharge flume to take the samples and then return the next day and recover the samples from the ISCO Sampler.

### III.  Bypassing Treatment and Tampering with Metro's Sampler

15.  Defendants **STARK** and **RANDALL** directed employees at Onsite's Nashville Facility to intentionally bypass waste treatment processes in an unpermitted manner and discharge untreated industrial waste into the Metro sewer system. On certain occasions, defendants **STARK** and **RANDALL** directed employees to bypass treatment processes due to inadequate capacity to treat the volume of wastes received at the Nashville Facility. On other occasions, defendants **STARK** and **RANDALL** directed employees to bypass treatment processes due to broken and malfunctioning equipment. For example, a decanter used to remove solids from food processing waste was broken on certain occasions. Nonetheless, Onsite continued to receive multiple truckloads of thousands of gallons per day of food processing waste for which it was paid to properly treat and dispose. At defendants **STARK's** and **RANDALL's** direction, Onsite employees at times bypassed the decanter process and discharged the untreated food processing

5

waste directly to the Nashville sewer system. At times, the untreated waste was so viscous that Onsite employees had to dilute the untreated and bypassed food processing waste with less viscous landfill leachate to make the untreated and bypassed food processing waste flow into the POTW.

16. To conceal the bypassing of the required pretreatment processes, defendants **STARK** and **RANDALL**, on one or more occasions, tampered with and caused other Onsite employees at the Nashville Facility to tamper with the ISCO Sampler installed by Metro to sample Onsite's discharges into the Nashville sewer system.

<u>COUNT ONE</u>
<u>Conspiracy</u>

THE GRAND JURY FURTHER CHARGES:

17. The allegations contained in Paragraphs 1 through 16 are incorporated and realleged as if fully set forth herein.

18. From at least in or about February 2021, and continuing through on or about January 17, 2023, the exact dates being unknown to the Grand Jury, in the Middle District of Tennessee, defendants **DAVID RAY STARK** and **CALEB WARREN RANDALL** did combine, confederate, conspire and agree together, and with others both known and unknown to the Grand Jury, (i) to defraud the United States by impeding and impairing the governmental functions of EPA, TDEC and Metro in administering and enforcing the Clean Water Act's NPDES permit program and the pretreatment permit program promulgated thereunder, and (ii) to knowingly commit offenses against the United States, that is to violate the Clean Water Act, 33 United States Code, Sections 1319(c)(2)(A) and (c)(4), 1342, 1317, and 40 Code of Federal Regulations, Part 403.

6

Object of the Conspiracy

19.    It was the objective of the conspirators and the purpose of the conspiracy to bypass Onsite's treatment processes and surreptitiously discharge Onsite's untreated and partially treated wastes to the Metro sewer system in violation of the prohibition on bypasses and of the limits set forth in the Pretreatment Permit. The conspirators and Onsite benefitted financially by avoiding the costs of pretreatment, avoiding and reducing treatment surcharges imposed by Metro, delaying and avoiding repair costs, and billing customers for treating their industrial wastes.

Manner and Means

20.    In furtherance of the conspiracy, defendants **STARK** and **RANDALL** operated and supervised the operation of Onsite's Nashville Facility in a manner that did not comply with the Pretreatment Permit, in that they directed Onsite employees to bypass treatment processes and discharge untreated or partially treated industrial wastes into the Metro sewer system. Defendants **STARK** and **RANDALL** directed others to bypass Onsite's treatment processes when Onsite did not have the ability to treat the industrial wastes it received at the Nashville Facility due to equipment breakdowns and because Onsite was receiving industrial wastes in volumes that exceeded its waste storage and treatment capacity.

21.    In furtherance of the conspiracy, defendants **STARK** and **RANDALL** directed others, known and unknown to the Grand Jury, to warn Onsite's employees when Metro's employees would arrive at the Nashville Facility so that Onsite employees could cease bypassing treatment systems and discharging untreated or partially treated industrial wastes into the Nashville sewer system to prevent Metro's employees from discovering the bypassing and discharges.

22.    In furtherance of the conspiracy, when Metro employees were not present, defendants **STARK** and **RANDALL** tampered with and directed others to tamper with sampling

7

equipment installed by Metro to sample Onsite's wastes being discharged into the Metro sewer system for the purpose of administering and enforcing the Pretreatment Permit. The tampering included:

a. removing the sampling hose of the ISCO Sampler from the discharge flume and placing it into a bucket containing water that was cleaner than and not representative of the waste that Onsite was discharging to the Metro sewer system;

b. opening the ISCO Sampler and replacing sampled wastes with water that was cleaner than and not representative of the waste that Onsite was discharging to the Metro sewer system, and then closing the sampling device; and

c. cleaning the exterior of the ISCO Sampler to remove dirt, oil, and other material that had adhered to the device while Onsite was bypassing treatment processes and discharging untreated or partially treated wastes to the Metro sewer system.

Overt Acts in Furtherance of the Conspiracy

23. In furtherance of the conspiracy, on multiple occasions from in or about at least February 2021, through on or about January 13, 2023, the exact dates being unknown to the Grand Jury, each occasion constituting a separate overt act, defendants **STARK** and **RANDALL** directed Onsite employees to bypass Onsite's treatment processes and discharge untreated and partially treated waste into the Metro sewer system in violation of the Pretreatment Permit.

24. In furtherance of the conspiracy, on multiple occasions from in or about at least February 2021, through on or about January 13, 2023, the exact dates being unknown to the Grand Jury, each occasion constituting a separate overt act, defendants **STARK** and **RANDALL** directed Onsite's employees to use walkie-talkies and other means of communication to warn other Onsite employees when Metro's employees arrived at Onsite's Nashville Facility so that Onsite

8

employees would cease bypassing and discharging treated or partially treated wastes into the Metro sewer system to prevent Metro's employees from witnessing the bypassing.

25. On multiple occasions from in or about at least February 2021 through on or about January 13, 2023, the exact dates being unknown to the Grand Jury, each occasion constituting a separate overt act, defendants **STARK** and **RANDALL** directed Onsite employees to clean the discharge flume of oily waste, dirt, filth, and other materials that had accumulated on the sides of the flume and the surrounding area in order to conceal from Metro employees that Onsite had been bypassing treatment processes and discharging untreated or partially treated waste into the Nashville sewer system.

26. From on or about December 5, 2022, through on or about December 22, 2022, the exact dates being unknown to the Grand Jury, defendants **STARK** and **RANDALL**, directed Onsite employees to bypass Onsite's treatment processes and discharge untreated and partially treated waste into the Metro sewer system in violation of the Pretreatment Permit.

27. From on or about January 4, 2023, through on or about January 22, 2023, the exact dates being unknown to the Grand Jury, defendants **STARK** and **RANDALL**, directed Onsite employees to bypass Onsite's treatment processes and discharge untreated and partially treated waste into the Metro sewer system in violation of the Pretreatment Permit.

28. On or about January 10, 11, and 12, 2023, the exact dates being unknown to the Grand Jury, defendants **STARK** and **RANDALL** tampered with and directed Onsite employees to tamper with and render inaccurate, a monitoring device that Metro placed at Onsite Environmental's Nashville Facility to monitor discharges and implement and enforce the requirements of the Pretreatment Permit.

In violation of Title 18, United States Code, Section 371.

9

<u>COUNT TWO</u>
<u>Discharge in Violation of Pretreatment Requirement</u>

THE GRAND JURY FURTHER CHARGES:

29.     The allegations contained in Paragraphs 1 through 16 are incorporated and realleged as if fully set forth herein.

30.     From on or about December 5, 2022, through on or about December 22, 2022, in the Middle District of Tennessee, defendants **DAVID RAY STARK** and **CALEB WARREN RANDALL** knowingly discharged waste in violation of a requirement of a pretreatment program approved under Title 33, United States Code, Section 1342(b)(8), namely, a prohibition on unpermitted bypasses, which was defined as the intentional diversion of waste streams from any portion of an industrial user's treatment facility.

In violation of Title 33, United States Code, Section 1319(c)(2)(A) and Title 18, United States Code, Section 2.

<u>COUNT THREE</u>
<u>Discharge in Violation of Pretreatment Requirement</u>

THE GRAND JURY FURTHER CHARGES:

31.     The allegations contained in Paragraphs 1 through 16 are incorporated and realleged as if fully set forth herein.

32.     From on or about January 4, 2023, through on or about January 17, 2023, in the Middle District of Tennessee, defendants **DAVID RAY STARK** and **CALEB WARREN RANDALL** knowingly discharged waste in violation a requirement of a pretreatment program approved under Title 33, United States Code, Section 1342(b)(8), namely, a prohibition on unpermitted bypasses, which was defined as the intentional diversion of waste streams from any

10

portion of an industrial user's treatment facility, which was incorporated into the Pretreatment Permit.

In violation of Title 33, United States Code, Section 1319(c)(2)(A) and Title 18, United States Code, Section 2.

COUNT FOUR
Tampering with a Monitoring Device

THE GRAND JURY FURTHER CHARGES:

33.     The allegations contained in Paragraphs 1 through 16 are incorporated and realleged as if fully set forth herein.

34.     On or about January 10, 2023, in the Middle District of Tennessee, defendants **DAVID RAY STARK** and **CALEB WARREN RANDALL** knowingly tampered with and rendered inaccurate a monitoring device required to be maintained under the Clean Water Act, to wit, a sampling device that Metro placed at Onsite Environmental's Nashville Facility to monitor discharges and implement and enforce the requirements of the Pretreatment Permit.

In violation of Title 33, United States Code, Section 1319(c)(4) and Title 18, United States Code, Section 2.

COUNT FIVE
Tampering with a Monitoring Device

THE GRAND JURY FURTHER CHARGES:

35.     The allegations contained in Paragraphs 1 through 16 are incorporated and realleged as if fully set forth herein.

36.     On or about January 11, 2023, in the Middle District of Tennessee, defendants **DAVID RAY STARK** and **CALEB WARREN RANDALL** knowingly tampered with and rendered inaccurate a monitoring device required to be maintained under the Clean Water Act, to

11

wit, a sampling device that Metro placed at Onsite Environmental's Nashville Facility to monitor discharges and implement and enforce the requirements of the Pretreatment Permit.

In violation of Title 33, United States Code, Section 1319(c)(4) and Title 18, United States Code, Section 2.

COUNT SIX
Tampering with a Monitoring Device

THE GRAND JURY FURTHER CHARGES:

37. The allegations contained in Paragraphs 1 through 16 are incorporated and realleged as if fully set forth herein.

38. On or about January 12, 2023, in the Middle District of Tennessee, defendants **DAVID RAY STARK** and **CALEB WARREN RANDALL** knowingly tampered with and rendered inaccurate a monitoring device required to be maintained under the Clean Water Act, to wit, a sampling device that Metro placed at Onsite Environmental's Nashville Facility to monitor discharges and implement and enforce the requirements of the Pretreatment Permit.

12

In violation of Title 33, United States Code, Section 1319(c)(4) and Title 18, United States Code, Section 2.

A TRUE BILL



FOREPERSON

ADAM R. F. GUSTAFSON
ACTING ASSISTANT ATTORNEY
GENERAL
ENVIRONMENT AND NATURAL
RESOURCES DIVISION

Matthew T. Morris
Senior Trial Attorney
Environmental Crimes Section

ROBERT E. McGUIRE
ACTING UNITED STATES ATTORNEY

Ahmed A. Safeeullah
Assistant United States Attorney

13

Case 3:25-cr-00196    Document 3    Filed 09/10/25    Page 13 of 13 PageID #: 15